UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br>AVIANCA HOLDINGS S.A., *et al.*,<br><br>　　　Appellants-Debtors and<br>　　　Reorganized Debtors. | Bankruptcy Case<br>No. 20-11133 (MG)<br><br>23 Civ. 1211 (KPF)<br><br>**OPINION AND ORDER** |

KATHERINE POLK FAILLA, District Judge:

　　Before the Court is an appeal from (a) the Decision of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") Resolving (I) Burnham Sterling and Company LLC and Babcock & Brown Securities LLC's Motion to Compel Compliance with 11 U.S.C. §§ 365(d)(5) and 503(b) and (II) Reorganized Debtors' Twenty-Fourth and Twenty-Fifth Omnibus Objections to Proofs of Claim, entered January 26, 2023 (the "January 26, 2023 Decision" or the "Decision"); and (b) the correlative Order Granting in Part Burnham Sterling and Company LLC and Babcock & Brown Securities LLC's Motion to Compel Compliance with 11 U.S.C. §§ 365(d)(5) and 503(b) and Overruling in Part Reorganized Debtors' Twenty-Fourth and Twenty-Fifth Omnibus Objections to Proofs of Claim, entered January 31, 2023 (the "January 31, 2023 Order" or the "Order"). The Decision and the Order both concern the treatment under the Bankruptcy Code of certain fees due to broker-initiators in connection with certain aircraft leases. For the reasons set forth in the remainder of this Opinion, this Court affirms the Decision and the Order of the Bankruptcy Court.

## BACKGROUND[1]

### A.  Factual Background

In 2014, Avianca Holdings S.A, subsequently known as HVA Associated Corp. ("HVA"), and two of its former affiliates, Aerovías del Continente Americano S.A. Avianca ("Aerovías") and Taca International Airlines, S.A. ("Taca," and together with HVA and Aerovías, "Avianca" or "Appellants") contracted with Burnham Sterling and Company LLC ("Burnham") and Babcock & Brown Securities LLC ("Babcock," and together with Burnham, the "Brokers" or "Appellees"), to arrange the financing and leasing of certain aircraft. (*See, e.g.*, A96-98). The Brokers thereafter originated twenty such leases on behalf of Avianca (the "Leases"). (A128-29, 132-33).

Rather than paying the Brokers contemporaneously for their services, under the applicable lease agreements (the "Lease Agreements"), Avianca was obligated to make "Additional Rental Payments" ("ARPs") to the respective lessors for the ultimate benefit of the Brokers in increments over the life of the Leases. (A25-26). By way of example, the Lease Agreement between Aircol 7, as Lessor, and Aerovías, dated April 25, 2019, includes the following provision:

> The Lessee shall on each Additional Rental Payment Date pay to the Lessor at the [Broker] Account, by way of additional rental payment, installments of the

---

[1]  The facts set forth in this Opinion are drawn from the parties' submissions pursuant to Federal Rule of Bankruptcy Procedure 8014. Citations in this Opinion to the Appendix use the convention "A[page number]." For ease of reference, the Court refers to the Brief of Appellants Debtors and Reorganized Debtors as "Avianca Br." (Dkt. #9); to the Brief of Appellees Burnham Sterling and Company LLC and Babcock & Brown Securities LLC as "Broker Opp." (Dkt. #10); to the Reply Brief of Appellants Debtors and Reorganized Debtors as "Avianca Reply" (Dkt. #11); to the Bankruptcy Court's January 26, 2023 Decision as "Bankr. Op." (A296-312); and to the Bankruptcy Court's January 31, 2023 Order as "Order" (A313-315).

> [Broker] Compensation .... The Sub-Lessee acknowledges that the [Brokers] ha[ve] already provided services prior to the Delivery Date, and accordingly agrees that the Sub-Lessee's obligations to pay the [Broker] Fees hereunder are unconditional.

(A25). Each of the Lease Agreements included a schedule fixing the dates on which the ARPs were to be made. (*Id.*). Additionally, the Lease Agreements designated the Brokers as express third-party beneficiaries with the power to enforce their rights under the Agreements. (A26).

On May 10, 2020, Avianca petitioned for bankruptcy in accordance with Chapter 11 of the United States Bankruptcy Code (the "Petition"). (A4-5). Laying the basis for the instant dispute, Section 365(d)(5) of the Bankruptcy Code arguably required Avianca, after a sixty-day grace period from the date it filed the Petition, to "timely perform all of [its] obligations" under any unexpired leases to which it was a party, unless it affirmatively "assumed" or "rejected" such leases. 11 U.S.C. § 365(d)(5). That is, following the sixty-day grace period, Avianca had to begin making all payments that were due under any of the unaccepted or un-rejected Lease Agreements *in full*, *i.e.*, not at any reduced rate extended to other Chapter 11 debts under the Bankruptcy Code.

Avianca did not assume or reject any of the Leases — the terms of which extended well beyond Avianca's bankruptcy (*see* Bankr. Op. 2) — during the sixty-day grace period provided for by Section 365(d)(5) (A176). Instead, Avianca gradually rejected the Leases over the course of the ensuing two years. (*See* Dkt. #4 at 4-7 (cataloging the dates on which each Lease Agreement was rejected)). Accordingly, under the Brokers' reading of Section 365(d)(5),

3

Avianca was responsible for paying "all obligations" under each Lease from the day the sixty-day grace period ended until the day the respective Lease was rejected. (A8-10).

Notwithstanding this obligation, Avianca failed to make any of the ARPs that came due under any of the Leases after the grace period had expired. (A7). Accordingly, the Brokers received only a portion of the aggregate ARPs they were owed under the Lease Agreements. In an effort to recoup these amounts, the Brokers filed multiple proofs of claim with the Bankruptcy Court related to the ARPs that had come due in the period from sixty days after the Petition was filed to the date that the corresponding Lease was rejected. (*See, e.g.*, A18-19, A84-85). Two of those claims, both filed in the HVA case, are relevant to this appeal: Burnham's Proof of Claim No. 4033 (the "4033 Claim") and Babcock's Proof of Claim No. 4038 (the "4038 Claim," and together with the 4033 Claim, the "Claims"). (*Id.*).

On November 20, 2022, the Brokers filed a motion seeking to compel immediate payment of the ARPs asserted in the Claims. (A1-95). In pertinent part, the Brokers argued that the subject ARPs were entitled to heightened priority under Bankruptcy Code Sections 503(b) and 365(d)(5). (A8-10). On December 2, 2022, Avianca filed objections to the Claims, contesting the applicability of Section 365(d) to the subject ARPs and arguing that the Claims should be treated as general unsecured claims — *i.e.*, like other pre-Petition debts — because the ARPs were earned during the pre-Petition period. (A96-121, A127-54). On January 9, 2023, the Brokers filed a consolidated response

to the objections and in further support of their motion to compel (A170-83), and on January 18, 2023, Avianca filed its reply (A184-231).

In its January 26, 2023 Decision, the Bankruptcy Court found that the ARPs at issue in the Claims were entitled to priority treatment under Section 365(d)(5), insofar as Avianca was obligated to timely and completely pay the Claims. (Bankr. Op. 3-4, 17). The Bankruptcy Court therefore partially granted the Brokers' motion to compel compliance with Section 365(d)(5) and denied Avianca's objections in that regard. (*Id.*).[2] The Bankruptcy Court ordered Avianca to pay the Brokers $4,338,484.66, the sum total of all ARPs that had arisen sixty days after the Petition up to the point that each corresponding Lease was rejected. (Order 2).

**B.      Procedural Background**

Soon after the Bankruptcy Court issued the Decision and the Order, on February 13, 2023, Avianca filed an appeal with this Court. (*See generally* Dkt. #1). By Order dated February 14, 2023, the Court indicated that the briefing schedule in this case would be dictated by Federal Rules of Bankruptcy Procedure 8014 through 8018. (Dkt. #3). Accordingly, on February 27, 2023, Appellant filed a Statement of Issues and Designation of Record on Appeal (Dkt. #4), which Record was made available to the Court on March 29, 2023

---

[2]   While adopting their construction of Section 365(d)(5), the Bankruptcy Court rejected the Brokers' arguments that the Claims should be categorized as administrative claims pursuant to Bankruptcy Code Section 503(b). (Bankr. Op. 4). The Brokers do not appeal from this component of the Decision and the Order. As noted in the text, to the extent that this Opinion uses the term "priority" in connection with the Claims, it is referring only to the requirements of timely and complete payment under Section 365(d)(5).

(Dkt. #7).  Thereafter, on April 28, 2023, Appellant filed its brief in support of its appeal and accompanying documents.  (Dkt. #9).  Appellees filed their opposing brief on May 30, 2023 (Dkt. #10), and Appellant filed a further reply brief on June 13, 2023 (Dkt. #11).

## DISCUSSION

### A. Applicable Law

#### 1. The Standard of Review

District courts have jurisdiction to hear appeals from decisions of a bankruptcy court pursuant to 28 U.S.C. § 158(a), which provides in relevant part that "[t]he district courts of the United States shall have jurisdiction to hear appeals ... from final judgment, orders, and decrees ... of bankruptcy judges[.]" 28 U.S.C. § 158(a).  A district court reviews the legal conclusions of a bankruptcy court *de novo*, *i.e.*, "without the slightest deference." *U.S. Bank Nat. Ass'n ex rel. CWCapital Asset Mgmt. LLC* v. *Vill. at Lakeridge, LLC*, 583 U.S. 387, 393 (2018).  On the other hand, a bankruptcy court's factual determinations are reviewed for clear error.  *See In re Anderson*, 884 F.3d 382, 387 (2d Cir. 2018) (citing *In re U.S. Lines, Inc.*, 197 F.3d 631, 640-41 (2d Cir. 1999)); *see also In re Lyondell Chem. Co.*, 585 B.R. 41, 52 (S.D.N.Y. 2018).

#### 2. Section 365(d) of the Bankruptcy Code

Section 365 of the Bankruptcy Code enables a Chapter 11 trustee to, "with court approval, assume or reject any executory contract or unexpired lease of the debtor." *In re Penn Traffic Co.*, 524 F.3d 373, 378 (2d Cir. 2008).  Under Section 365, assumption is "a decision to continue performance ...

6

[maintaining] the parties' rights to future performance under the contract or lease." *Id.* Rejection, on the other hand, amounts to "a decision to breach the contract or lease," *id.*, upon which its "obligations [are] reduced to general unsecured claims for pre[-]petition damages pursuant to 11 U.S.C. § 365(g)(1)," *In re Child World, Inc.*, 147 B.R. 847, 852 (Bankr. S.D.N.Y. 1992).

The purpose of Section 365 is to "balance the state law contract right of the creditor to receive the benefit of his bargain with the federal law equitable right of the debtor to have an opportunity to reorganize." *In re Circle K Corp.*, 190 B.R. 370, 376 (B.A.P. 9th Cir. 1995), *aff'd*, 127 F.3d 904 (9th Cir. 1997); *accord In re Chateaugay Corp.*, 10 F.3d 944, 954-55 (2d Cir. 1993). It achieves this purpose by "forcing the debtor to abide by [a] contract['s] provisions during pendency of the bankruptcy and cure any pre[-]petition defaults upon assumption," while, at the same time, "prohibiting the creditor from enforcing any pre[-]petition default remedies." *In re Circle K Corp.*, 190 B.R. at 376; *see also In re Chateaugay Corp.*, 10 F.3d at 955; *In re New Almacs, Inc.*, 196 B.R. 244, 250 (Bankr. N.D.N.Y. 1996) ("[The] debtor should be afforded a reasonable opportunity to decide whether to assume or reject a lease ... [a]t the same time, the lessor is entitled to a certain degree of special consideration in the instance where it is being forced to await the debtor's decision[.]").

Relevant to the instant appeal, Section 365(d)(5) details the protections afforded to a creditor-lessor of personal property in the period before a debtor decides to assume or reject a lease. Specifically, it provides that:

7

> The trustee shall timely perform all of the obligations of the debtor ... first arising ... after [sixty] days after the order for relief in a case under chapter 11 of this title under an unexpired lease of personal property ... until such lease is assumed or rejected ... unless the court, after notice and a hearing and based on the equities of the case, orders otherwise with respect to the obligations or timely performance thereof.

11 U.S.C. § 365(d)(5). In other words, following a petition for bankruptcy, a Chapter 11 trustee must perform all of the debtor's obligations under any unexpired lease of personal property arising after the expiration of the sixty-day grace period until that lease is assumed or rejected — unless the court orders otherwise. *In re Glob. Container Lines Ltd.*, No. 09-78585 (AST), 2013 WL 12575666, at *3 (Bankr. E.D.N.Y. Apr. 9, 2013); *see also Adelphia Bus. Sols., Inc.* v. *Abnos*, 482 F.3d 602, 605-06 (2d Cir. 2007).

**B.   Analysis**

The narrow issue presented by Avianca's appeal is whether the Bankruptcy Court erred in holding that the ARPs owed by Avianca to the Brokers pursuant to the Lease Agreements are entitled to priority under Section 365(d)(5) of the Bankruptcy Code. As just noted, an obligation may be entitled to such priority if it "aris[es]" after the bankruptcy filing. 11 U.S.C. § 365(d)(5). According to Appellants, the ARPs "arose" when they became "unconditional" obligations of the Appellants, *i.e.*, upon execution of the Lease Agreements (and before the relevant bankruptcy filing). (Avianca Br. 7). For their part, Appellees counter that the obligations to pay the ARPs — which were scheduled to be paid in installments over the term of the Leases, including

8

during the post-Petition period — "arose" on those incremental due dates. (Broker Opp. 2).

This Court reviews *de novo* the Bankruptcy Court's legal determination that the ARPs owed by Appellants to Appellees — specifically, the ARPs that came due after the grace period and before the particular Lease was rejected — are entitled to priority treatment under Section 365(d)(5). For the reasons set forth below, the Court agrees with the Bankruptcy Court's determination. In particular, the Court finds that Appellants' obligation to make the disputed payments "arose" upon their respective due dates for purposes of Section 365(d)(5), and as such, that those ARPs merit timely and complete payment by Appellants pursuant to that provision. Accordingly, the Court affirms the decision of the Bankruptcy Court.

In making this determination, the Court relies primarily on the text of Section 365(d)(5). Importantly, the Court is guided by case law interpreting the text of Section 365(d)(5) as well as that of its sister provision, Section 365(d)(3). The Court cites both sets of cases but, for clarity, refers only to Section 365(d)(5) herein.[3]

---

[3] Section 365(d)(5) of the Bankruptcy Code was modeled after Section 365(d)(3), both of which were added to the Bankruptcy Code in 1994 to enable lessors to recover post-petition lease payments from a debtor prior to acceptance or rejection of an unexpired lease. *See In re Lakeshore Const. Co. of Wolfeboro, Inc.*, 390 B.R. 751, 755-56 (Bankr. D.N.H. 2008). Section 365(d)(3) pertains to unexpired leases of nonresidential real property, while Section 365(d)(5) pertains to unexpired leases of personal property, "other than personal property leased to an individual primarily for personal, family, or household purposes." *Compare* 11 U.S.C. § 365(d)(3), *with id.* § 365(d)(5).

Given the similarity in text, origin, and purpose of the two provisions (as well as the relative dearth of case law interpreting Section 365(d)(5)), courts often look to decisions construing Section 365(d)(3) in cases involving Section 365(d)(5). *See, e.g., In re Bella Logistics LLC*, 583 B.R. 674, 679 n.7 (Bankr. W.D. Tex. 2018); *In re Pettingill*

9

As a threshold matter, courts are split as to whether the language of Section 365(d)(5) is ambiguous. Some courts have concluded in the affirmative. *See, e.g.*, *In re GCP CT Sch. Acquisition, LLC*, 443 B.R. 243, 253-55 (Bankr. D. Mass. 2010); *Heathcon Holdings, LLC* v. *Dunn Indus., LLC* (*In re Dunn Indus., LLC*), 320 B.R. 86, 90 (Bankr. D. Md. 2005); *In re Ames Dep't Stores, Inc.*, 306 B.R. 43, 65 (Bankr. S.D.N.Y. 2004); *In re Travel 2000, Inc.*, 264 B.R. 444, 450 (Bankr. W.D. Mich. 2001). These courts often parse the words "obligation" — *see, e.g.*, *In re Child World, Inc.*, 161 B.R. 571, 574 (S.D.N.Y. 1993) ("Black's Law Dictionary states that obligation is 'a generic word having many, wide, and varied meanings, according to the context in which it is used.'" (alterations adopted)) — and "arise" — *see, e.g.*, *In re Ames*, 306 B.R. at 67 ("'[A]rise' can be understood in either an absolutist or accrual sense[.]") — to conclude that the aggregate amount of a particular lease obligation (*e.g.*, regular contributions to property taxes) should be prorated for Section

---

*Enterprises, Inc.*, 486 B.R. 524, 531-32 (Bankr. D.N.M. 2013); *In re Lakeshore Const. Co. of Wolfeboro, Inc.*, 390 B.R. at 756; *see also In re Fed.-Mogul Glob. Inc.*, 222 F. App'x 196, 199 (3d Cir. 2007) (unpublished decision); *In re Midway Airlines Corp.*, 406 F.3d 229, 234 (4th Cir. 2005); *cf. In re Sylva Corp.*, 519 B.R. 776, 781 (B.A.P. 8th Cir. 2014) ("[While] the operative language of [Section] 365(d)(3) and (d)(5) are similar enough that cases under [Section] 365(d)(3) ... are relevant to provide guidance to a court interpreting a situation under [Section] 365(d)(5), they are not necessarily 'automatic' or 'dispositive.'").

The Court nonetheless acknowledges that Section 365(d)(3) and Section 365(d)(5) are not identical. Among other things,

> Section 365(d)[(5)] applies only to chapter 11 cases, whereas [Section] 365(d)(3) is not limited by chapter. Also, under [Section] 365(d)(3) the trustee is required to perform all lease obligations immediately upon entry of an order for relief. Under [Section] 365(d)[(5)] the trustee is not required to perform until sixty-one days after the entry of an order for relief.

*In re Midway Airlines Corp.*, 406 F.3d at 234 n.1.

365(d)(5) purposes into pre-petition and post-petition periods in accordance with the life of the lease.

For example, in *In re Child World*, the court considered a Chapter 11 debtor's obligation, under a nonresidential real property lease, to pay its share of property taxes on a shopping center. 161 B.R. at 572-73 ("Child World's rent under the [l]ease consisted of a monthly base charge, a percentage of gross profits, and Child World's proportionate share of the net amount of all real estate taxes and assessments levied and assessed against the shopping center."). At issue was a bill that came due in June 1992, more than five weeks after Child World petitioned for bankruptcy in early May 1992, corresponding to real estate taxes that had been assessed for the period from January to June of that year. *Id.* The court determined that the bill should be prorated for Section 365(d)(5) purposes to cover only those taxes that were accrued during the post-petition, pre-rejection period. *Id.* at 575-77.

Other courts view the text of Section 365(d)(5) as unambiguous, at least as applied under the circumstances. For these courts, the task of "applying [Section 365(d)(5)] [i]s straightforward: any obligation of the debtor under the lease which becomes due after [the petition] and before the lease is assumed or rejected must be paid or otherwise fulfilled when due." *In re Burival*, 406 B.R. 548, 552 (B.A.P. 8th Cir. 2009), *aff'd*, 613 F.3d 810 (8th Cir. 2010); *see also, e.g.*, *HA-LO Indus., Inc. v. CenterPoint Props. Trust*, 342 F.3d 794, 797-800 (7th Cir. 2003); *CenterPoint Props. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 268 F.3d 205, 208-12 (3rd Cir. 2001); *Koenig*

*Sporting Goods, Inc.* v. *Morse Road Co.* (*In re Koenig Sporting Goods, Inc.*), 203 F.3d 986, 988-90 (6th Cir. 2000).

For example, in *In re Burival*, a partnership of farmers entered into a lease of crop land, which lease set the annual rent for the period from March 2007 through February 2008 at $166,129.  406 B.R. at 550-51.  This amount was to be paid in two installments, on the first days of April and December 2007.  *Id.*  The farmers filed for Chapter 11 bankruptcy at the end of November 2007.  *Id.*  Notwithstanding the fact that a portion of the rent owed under the December 1, 2007 bill corresponded to the pre-petition period, the court determined that the entire amount of the December 1, 2007 rent bill was covered by Section 365(d), having come due after the relevant bankruptcy petition.  *Id.* at 556.

This Court finds the reasoning of the latter group of courts to be the more persuasive for the instant case.  The natural reading of the statute, in concert with the text of the Lease Agreements, dictates that Appellants' obligation to make the disputed payments arose when each such payment came due.  Significantly, use of the word "unconditional" in the Lease Agreements to describe the obligation to pay the ARPs does not impact the timing of when such an obligation "arises"; rather, it impacts only the obligor's right to insist upon payment after the obligation has arisen.

The parties to the Leases — all sophisticated entities — contracted in a manner that makes plain their intent to ensure that Appellants' payment obligations did *not* arise at the time the Lease Agreements were signed.  While

12

the Court agrees with Appellants that "the [ARPs], which compensate the [Brokers] for services already rendered ... are significantly and materially different from rental obligations" (Avianca Br. 13), the parties nonetheless chose to define the amounts as "Additional Rent Payments" in the Lease Agreements. In so doing, the parties explicitly likened the ARPs to traditional rent payments, the most basic obligation under any lease (and one that unequivocally arises when it comes due monthly or otherwise). (*See also* Bankr. Op. 13 ("The parties' decision to term Avianca's obligations to the [Brokers] 'lease' obligations, in a way that squarely fits within [S]ection 365(d)(5), can only have been intentional.")). For this reason, the statute and the Lease Agreements — by their terms — bring the ARPs within the ambit of Section 365(d)(5). *See In re Montgomery Ward Holding Corp.*, 268 F.3d at 209 ("The clear and express intent of § 365(d)[5] is to require the trustee to perform the lease in accordance with its terms ... an approach which calls for the trustee to perform obligations as they become due under the terms of the lease fits comfortably with the statutory text.").

Conversely, the Court finds Appellants' reading of Section 365(d)(5) — at least as applied in this case — to be strained. Section 365(d)(5) requires a Chapter 11 trustee to "perform all of the obligations of the debtor" in the post-petition, pre-rejection period. 11 U.S.C. § 365(d)(5). Accepting Appellants' argument that their "obligation" to pay the ARPs "arose" when the Lease Agreements were signed would not "fit comfortably" with the statutory text, particularly considering Section 365(d)(5)'s use of the verb "perform." After all,

13

upon the parties' signing of the Lease Agreements, Appellants had no obligations to "perform." Quite the opposite: Appellants were not required to perform any of the relevant obligations until the date that each of the ARPs came due. As such, it is on those dates that Appellants' respective obligations arose. *See In re R.H. Macy & Co., Inc.*, 152 B.R. 869, 873 (Bankr. S.D.N.Y. 1993) ("The ordinary meaning of the word obligation refers to '[t]hat which a person is bound to do or forbear' ... [but] [t]here was no obligation for the [d]ebtor to perform prior to the [p]etition [d]ate." (quoting *Obligation*, BLACK'S LAW DICTIONARY (6th ed. 1990))), *aff'd*, No. 93 Civ. 4414 (SS), 1994 WL 482948 (S.D.N.Y. Feb. 23, 1994).

Having concluded that the application of the statute is unambiguous in the instant case, the Court need not address Appellants' other arguments concerning the policy (*see* Avianca Br. 17; Avianca Reply 7-8), and legislative history (*see* Avianca Br. 15-16; Avianca Reply 7-8), underlying Section 365(d)(5). Nonetheless, the Court does so briefly, for the purpose of demonstrating that there are legislative history and policy arguments favoring Appellees' position as well.

*First*, in arguing that the Brokers should not be compensated at a higher rate than other creditors who also completed work for Avianca in the pre-Petition period, Avianca appeals generally to the Bankruptcy Code's policy of "treating like creditors the same." (Avianca Br. 17). But the Court cannot conclude that this policy necessarily supports Avianca's view. The instant case is complicated in part by the peculiar nature of the "obligations" at issue. The

cases on which Avianca relies involve almost exclusively the application of Section 365(d) to periodically assessed rent payments or real estate and property taxes.  In contrast, this case involves broker-initiation fees specifically defined under the Lease Agreements as "Additional Rent Payments."  Unlike the rent and tax cases, the time period in which the services underlying the ARPs falls is undisputedly pre-Petition (and, in fact, pre-Lease).

For this reason, the proration/accrual approach of the *Child World* line of cases (*i.e.*, those cases finding the text of Section 365(d)(5) to be ambiguous) operates atypically in the instant case.  Because all of Appellees' services were rendered prior to the execution of the Lease Agreements, there is nothing that "accrues" (*e.g.*, aggregate property taxes owed) over the life of the Leases.  Accordingly, were it to adopt such an approach, the Court could only conclude that the entire amount of the ARPs arose pre-Petition and was undeserving of treatment under Section 365(d)(5).

This conclusion is, of course, precisely what Appellants seek.  But such a conclusion would not seem to be consonant with the pursuit of equity amongst potential creditors.  *In re Burival*, 406 B.R. at 552-53.  That is, it is not obvious to the Court that the Brokers, whose work for Avianca has long since been completed, and who carefully negotiated the terms of the Lease Agreements years ago to account for a myriad of contingencies, should be relegated to stand alongside Avianca's more recent creditors, or earlier creditors who lacked the Brokers' foresight.  (*See also* Bankr. Op. 13 ("[E]nforcing such a conscious negotiating decision that renders Avianca's recurring payment obligations to

15

Case 1:23-cv-01211-KPF   Document 12   Filed 12/29/23   Page 16 of 18

the Initiators 'obligations of the debtor' under a 'lease' does not strike the Court as a windfall that can be said to contravene the intent of Congress nearly 30 years after it enacted [S]ection 365(d)(5) using words that perfectly describe the parties' negotiated arrangements here.")).

*Second*, the Court does not agree that the legislative history of Section 365(d)(5) unreservedly supports Appellants' interpretation of the statute. As an initial matter, it cannot be the case that "ensur[ing] landlords received current payment for current services" (Avianca Br. 16 (internal quotation marks omitted)), was the sole (or even primary) motivation of Congress in enacting Section 365(d). If it was, one would wonder why — as the Bankruptcy Court explained in its decision — Section 365(d)(5) "expressly and unambiguously requires timely payment of 'all of the obligations of the debtor' under a lease, not merely 'rent' and not merely payments to 'lessors.'" (Bankr. Op. 8).

More to the point, Congress also intended Section 365(d) to "'prevent parties in contractual or lease relationships with the debtor from being left in doubt concerning their status vis-à-vis the estate.'" *Tully Constr. Co.* v. *Cannonsburg Envtl. Assocs.* (*In re Cannonsburg Envtl. Assocs.*), 72 F.3d 1260, 1266 (6th Cir. 1996) (quoting H.R. REP. No. 95-595, at 348 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6304). Section 365(d)(5)'s unequivocal language (*i.e.*, that the debtor must perform "all obligations" for those leases that are neither rejected nor assumed after the sixty-day grace period) was supposed to encourage debtors to "make up [their] mind to reject [a lease] before some onerous payment comes due during the prerejection period." *In re Krystal Co.*,

16

194 B.R. 161, 164 (Bankr. E.D. Tenn. 1996).  And on this point, it bears noting that "[Avianca] alone was in the position to control [the Brokers'] entitlement to payment of [the ARPs in the post-Petition period.]  If [Avianca] had rejected the [L]ease[s] [earlier,] it would not have been obligated to pay [the ARPs] under 11 U.S.C. § 365(d)[5]." *In re Koenig Sporting Goods, Inc.*, 203 F.3d at 989.  As such, categorizing the post-Petition ARPs as general unsecured claims — as opposed to payments Appellants are now obligated to make under the Bankruptcy Code following their strategic decision to neither reject nor assume the Leases during the prescribed sixty-day grace period — would undermine the legislative goal of encouraging debtors to make decisions regarding their unexpired leases in a timely fashion.

Ultimately, policy and legislative history fail to overcome the clear text of Section 365(d)(5).  For this reason, as then-District Judge Sonia Sotomayor did in *In re R.H. Macy & Co., Inc.*, this Court "decline[s]… to read into [Section 365(d)(5),] an unambiguous, clear statute[,] a revision based on … considerations" external to the text.  No. 93 Civ. 4414 (SS), 1994 WL 482948, at *12 (S.D.N.Y. Feb. 23, 1994).  The unavoidable conclusion resulting from the language of the parties' carefully negotiated Lease Agreements is that the disputed ARPs are "obligations of the debtor … first arising … after the [petition] in a case under chapter 11 of this title under an unexpired lease of personal property[.]"  11 U.S.C. § 365(d)(5).  The Bankruptcy Court was therefore correct to conclude that they were subject to timely and complete payment by Appellants under Section 365(d)(5).

## CONCLUSION

Based upon the foregoing analysis, the decision of the Bankruptcy Court is AFFIRMED. The Clerk of Court is directed terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated:     December 29, 2023
           New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge